IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE |
| | ) | |
| v. | ) | |
| | ) | |
| $11,766.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | **COMPLAINT IN FORFEITURE** |

NOW COMES plaintiff, the United States of America, by Michelle M. Baeppler, First

Assistant United States Attorney for the Northern District of Ohio, and Henry F. DeBaggis,

Assistant U.S. Attorney, and files this Complaint in Forfeiture, respectfully alleging, in

accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, as follows:

**JURISDICTION AND INTRODUCTION**

1.      This Court has subject matter jurisdiction over an action commenced by the

United States under 28 U.S.C. Section 1345, and over an action for forfeiture under 28 U.S.C.

Section 1355(a).  This Court also has jurisdiction over this particular action under 21 U.S.C.

Section 881(a)(6).

2.      This Court has *in rem* jurisdiction over the defendant currency: (i) pursuant to 28

U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district;

and, (ii) pursuant to 28 U.S.C. Section 1355(b)(1)(B), incorporating 28 U.S.C. Section 1395,

because the action accrued in this district. This Court will have control over the defendant currency through service of an arrest warrant *in rem*, which the Department of Homeland Security by Homeland Security Investigations (HSI) will execute upon the defendant currency. *See*, Supplemental Rules G(3)(b) and G(3)(c).

      3.     Venue is proper in this district: (i) pursuant to 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and, (ii) pursuant to 28 U.S.C. Section 1395 because the action accrued in this district.

      4.     On October 10, 2022, the defendants $11,766.00 in U.S. Currency was seized from a carry-on bag Robert Charles Seymore Jamison ("JAMISON") was traveling with at Cleveland Hopkins International Airport. The seizure was made by a detective assigned to the Ohio Northeast Smuggling Enforcement Team (ONSET), task force officers (TFO) with HSI and law enforcement officers with the Cleveland Police Department. The defendant currency is now in the custody of the federal government.

      5.     Subsequent to the seizure, U.S. Customs and Border Protection's (CBP) Fines, Penalties & Forfeiture Office (FP&F) commenced an administrative forfeiture proceeding against the defendant currency. A claim to the defendant currency was submitted by JAMISON in the administrative forfeiture proceeding, thereby requiring the filing of this judicial forfeiture action.

      6.     The defendant $11,766.00 in U.S. Currency is subject to forfeiture to the United States under 21 U.S.C. Section 881(a)(6) in that it constitutes proceeds from illegal drug trafficking activities, and/or was used - or was intended to be used - in exchange for illegal controlled substances, and/or was used - or was intended to be used - to facilitate illegal drug trafficking activities.

**FORFEITURE**

7.      On October 10, 2022, a detective assigned to the Ohio Northeast Smuggling Enforcement Team (ONSET), task force officers (TFOs) with HSI, law enforcement officers with the Cleveland Police Department (CPD) and a CPD canine officer were involved with surveillance and interdiction at Cleveland Hopkins International Airport in Concourse C of the airport.

8.      During law enforcement surveillance, officers observed JAMISON sitting in the C23 gate area, in possession of a black duffle bag and wearing a white long-sleeved shirt, black pants and shoes with marijuana leaf print.

9.      JAMISON was observed to be fixated on the law enforcement canine and he stared at the canine for several minutes.

10.      When JAMISON walked down the jet bridge to board the aircraft, he was approached by TFO Gibbons and JAMISON agreed to talk to TFO Gibbons.

11.      JAMISON told TFO Gibbons that he was traveling to San Francisco and that he planned on being there for four days.  JAMISON was asked if he was in possession of a large amount of U.S. currency and JAMISON stated that he had $9,000 in his duffle bag.  JAMISON was asked where the currency was located in the duffle bag and JAMISON stated that it was in both of the end pockets of the duffle bag.  JAMISON was asked if he would show TFO Gibbons the currency and JAMISON opened one of the end compartments of the bag, revealing a jar of suspected marijuana on top of a large amount of U.S. currency.

12.      TFO Gibbons asked JAMISON how much U.S. currency he had on his person and JAMISON stated that he had approximately $1,000 in his pocket.  JAMISON was asked how much total U.S. currency he had and JAMISON said $9,000.  JAMISON was asked if he

3

had a checked bag and he said that he did and he agreed to have his checked bag retrieved and brought to the HSI airport office where JAMISON also agreed to go with TFO Gibbons.

13. Once at the HSI airport office, TFO Gibbons asked JAMISON for permission to search his bags and JAMISON consented to the search of his bags. The duffle bag was found to have loose U.S. currency in both end compartments, a jar of marijuana/tetrahydrocannabinal (THC), several unused THC wax containers and plastic sandwich baggies. Also, a second duffle bag was located inside the black duffle bag. A search of JAMISON's checked large roller suitcase revealed a second large roller suitcase inside, which contained a vacuum sealer and several vacuum seal bags, some of which appeared to have contained marijuana at one time because some of the bags had marijuana residue inside the bags. The U.S. currency seized from JAMISON totaled $11,766.00.

14. While at the HSI airport office, TFO Gibbons asked JAMISON if he was going to purchase marijuana while in San Francisco and JAMISON stated that he was going to purchase marijuana while in San Francisco. TFO Gibbons asked JAMISON how much marijuana he was going to purchase, and JAMISON said he did not know. TFO Gibbons asked JAMISON what the purpose was for having a vacuum sealer and vacuum sealer bags and JAMISON stated just to have them. TFO Gibbons asked JAMISON if he intended on vacuum sealing marijuana and bringing it back to Ohio from California and JAMISON stated marijuana was legal to purchase in California, but he did not want any issues when transporting it back to Ohio, where it is not legal to possess. TFO Gibbons asked JAMISON how much marijuana fit in one vacuum seal bag and JAMISON stated one pound of marijuana.

*

4

15.     On February 3, 2023, JAMISON was at the San Francisco International Airport with J.J. Prior to J.J. boarding United Airlines flight 1872 destined for Cleveland Hopkins International Airport from San Francisco, JAMISON checked multiple bags for the Cleveland flight; however, JAMISON never boarded the flight with J.J.

16.     On February 3, 2023, after United Airlines flight 1872 arrived at Cleveland Hopkins International Airport, law enforcement with K9 Nero conducted open air sniffs of luggage from flight 1872 and K9 Nero gave a positive alert on the five bags checked by JAMISON and J.J. After the positive alert, the five bags were placed on the airport baggage carousel.

17.     After the five bags were placed on the airport baggage carousel, law enforcement observed J.J. remove the five bags from the carousel.

18.     After J.J. removed the bags from the carousel, TFO Gibbons made contact with J.J. and J.J. told TFO Gibbons that three of the bags were his but the other two belonged to Robert JAMISON.

19.     TFO Gibbons asked J.J. for consent to search the bags and J.J. gave consent to search his book bag and one suitcase. J.J. advised TFO Gibbons that the other suitcases belonged to JAMISON, so J.J. declined consent to search the other suitcases.

20.     J.J.'s book bag and suitcase were found to contain clothing and miscellaneous personal items.

21.     On February 6, 2023, law enforcement obtained a state search warrant authorizing a search of the other four suitcases seized from J.J., and upon execution of the search warrant, the suitcases were found to contain a total of approximately one hundred eight (108) pounds of

suspected marijuana which was separately packaged in one hundred eight (108) individual plastic baggies, with each baggie weighing approximately one (1) pound.

*

22.     On February 13, 2023, JAMISON was stopped by the Wyoming Highway Patrol for a traffic violation.  The Wyoming Highway Patrol officer told JAMISON that he smelled the strong odor of raw marijuana coming from JAMISON's person and after the officer advised JAMISON that the officer would be conducting a search of JAMISON's vehicle, JAMISON admitted to marijuana being in the vehicle and stated that he possessed a medical marijuana card.

23.     Prior to the search of JAMISON's vehicle, the Wyoming patrol officer deployed his narcotic odor detection K-9 Reno around the exterior of JAMISON's vehicle and K-9 Reno alerted to the area of the leading door seam on the passenger side of the vehicle.

24.     During the probable cause search of JAMISON's vehicle, approximately 167 pounds of suspected marijuana was discovered in the vehicle, the majority of which was packaged in individual vacuum sealed bags contained within multiple pieces of soft-sided luggage.  A small amount of raw marijuana was also discovered in two clear Ziploc-style bags and a small clear mason jar.

25.     JAMISON was subsequently charged in Laramie County District Court in Wyoming in Case No. 2023-CR-0036254 with state criminal violations relating to his possession and transportation of approximately 167 pounds of marijuana.

*

## CONCLUSION

26.     By reason of the foregoing, the defendant $11,766.00 in U.S. Currency is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6) in that the currency constitutes

proceeds from illegal drug trafficking activities, and/or was used - or was intended to be used - in exchange for illegal controlled substances, and/or was used - or was intended to be used - to facilitate illegal drug trafficking activities.

WHEREFORE, plaintiff, the United States of America, requests that this Court enter judgment condemning the defendant property and forfeiting it to the United States, and providing that the defendant property be delivered into the custody of the United States for disposition according to law, and for such other relief as this Court may deem proper.

Respectfully submitted,

Michelle M. Baeppler
First Assistant United States Attorney
Northern District of Ohio

By:

Henry F. DeBaggis (OH: 0007561)
Assistant United States Attorney
Carl B. Stokes U.S. Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
216.622.3749 / Fax: 216.522.7499
Henry.DeBaggis@usdoj.gov

**VERIFICATION**

STATE OF OHIO         )
                                ) SS.
COUNTY OF CUYAHOGA  )

      I, Henry F. DeBaggis, under penalty of perjury, depose and say that I am an Assistant United States Attorney for the Northern District of Ohio, and the attorney for the plaintiff in the within entitled action.  The foregoing Complaint in Forfeiture is based upon information officially provided to me and, to my knowledge and belief, is true and correct.

                                             Henry F. DeBaggis (OH: 0007561)
                                           Assistant United States Attorney

Sworn to and subscribed in my presence this _16th_ day of March 2023.

Notary Public

ANNA J DUDAS
Notary Public
State of Ohio
My Comm. Expires
December 5, 2026